Sean NORCUTT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A04–9311–CR–409.

Court of Appeals of Indiana,
Fourth District.

April 26, 1994.

Mark A. Bates, Crown Point, for appellant.

Pamela Carter, Atty. Gen., Joseph F. Pieters, Deputy Atty. Gen., Indianapolis, for appellee.

RILEY, Judge.

## STATEMENT OF THE CASE

Defendant–Appellant Sean Norcutt appeals his conviction for burglary, a class C felony.[1]

We affirm.

## ISSUES

Norcutt raises the following issues for our consideration:

1. Whether there was sufficient evidence to establish venue.

2. Whether the trial court committed reversible error in denying repeated motions for mistrial.

## FACTS

In the early morning hours of June 22, 1992, James Freund parked his motorcycle in the three car garage across the alley from his home. James bar-locked the three overhead doors and padlocked the service door.

---

1. IND.CODE 35–43–2–1.

At about 5:30 the same morning, Phyllis Cain heard a loud crash outside her apartment in Lansing, Illinois. She went to the window and observed two young men with a large motorcycle caught under a guard rail. Cain immediately called the Lansing Police. When the police arrived, the two men, who were trying to extricate the motorcycle, fled on foot. Lansing Police Officer Brad Borys was able to apprehend one of the men, who was later identified as Norcutt. Through a registration check, Officer Borys identified the motorcycle as belonging to James Freund.

At approximately 6:00 a.m., James received a phone call from the Lansing Police Department. The officer making the call told James to check and see if his motorcycle was missing. The officer directed James to file a report with the Hammond Police Department and have them contact the Lansing Police.

James and his brother Frank went to the garage and noticed that the middle overhead door was open, both James' and Frank's motorcycles were gone, and the padlock for the service door was missing. James and Frank went to the Hammond Police Department to file a report. They then went to the Lansing Police Department to recover James' motorcycle, which was damaged beyond repair. Frank eventually recovered his motorcycle through his own investigation.

Norcutt was charged and convicted of burglary, a class C felony.

### DISCUSSION AND DECISION
#### I. VENUE

Norcutt contends the State failed to submit sufficient evidence to establish venue. He cites I.C. 35–32–2–1 (1993), which states that a "[c]riminal action shall be tried in the county where the offense was committed...."

■ The State must establish venue by a preponderance of the evidence. *Evans v. State* (1991), Ind., 571 N.E.2d 1231, 1233. Venue may be established by circumstantial evidence. *Id.* The State has met its burden if the facts and circumstances of the case permit the jury to infer that the crime oc-

curred in a given county. *Gillie v. State* (1987), Ind., 512 N.E.2d 145, 151.

■ In the present case, once James and Frank discovered that their motorcycles had been stolen, they filed a report with the Hammond Police Department. When the Lansing Police Department called James, they advised him to file a report with the Hammond Police Department. Further, Officer Borys testified that while James and Frank were at the Lansing Police Department, he told them that "they would have to contact the Hammond Police Department since the vehicle was stolen from Hammond...." (R. 266). Borys also testified that he turned the case over to Officer Dennis Callahan of the Hammond Police Department. Finally, a written statement made by Norcutt to Officer Callahan indicated the garage was in Hammond. These facts were sufficient to establish that the burglary occurred in Hammond. The trial court judicially knew that Hammond is located in Lake County, and that Lake County is located in Indiana. *See Buhmeier v. State* (1934), 206 Ind. 645, 190 N.E. 857, 858 (holding that the supreme court will take notice of the fact that City of Evansville is in Vanderburgh County, and that there is in the State of Indiana a Vanderburgh County); *Dunlap v. State* (1932), 205 Ind. 384, 180 N.E. 475, 478 (holding it is judicially known that Rensselaer is located in Jasper County).

#### II. MOTIONS FOR MISTRIAL

Norcutt contends the trial court abused its discretion in denying his motions for mistrial. Two such motions were made with regard to the admission of evidence. One motion was made after an alleged discovery violation. Finally, a motion was made after the trial court informed the parties that a written statement could be used for impeachment.

■ A trial court has discretion in determining whether to grant a mistrial. *Gregory v. State* (1989), Ind., 540 N.E.2d 585, 589. The trial court's decision is given great deference on appeal because the trial court was in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Id.* To succeed on appeal from the

denial of a motion for mistrial, the defendant must demonstrate the conduct in question was so prejudicial that he was placed in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Id.* A mistrial is an extreme remedy which should be granted only when an error cannot be rectified by some other remedy. *Schlomer v. State* (1991), Ind., 580 N.E.2d 950, 955.

■ Norcutt's first motion for mistrial was occasioned by Frank Freund's testimony that Norcutt's accomplice, Brian Runick, told him where his motorcycle could be found. His second motion was a result of Frank's statement that Runick had reimbursed him for damage to the motorcycle but Norcutt had not. In both instances, the trial court immediately admonished the jury to disregard the witness's statement.

■ Where a motion for mistrial is based upon isolated, inadvertent comments by a witness, the trial court does not abuse its discretion by refusing to declare a mistrial. *Jackson v. State* (1991), Ind., 575 N.E.2d 617, 622. Unless there is some compelling reason to think otherwise, a trial court's admonition is presumed to have dispelled any prejudice. *Roche v. State* (1992), Ind., 596 N.E.2d 896, 902. In the present case, the admonishment was sufficient to dispel any false conclusions by the jury.

■ Norcutt's third motion for mistrial was based on his claim that the State withheld evidence regarding a statement made by Norcutt to Officer Callahan that he acted as Runick's look-out. Norcutt contends the State's withholding of this statement resulted in a surprise response by Officer Callahan during cross-examination.

The statement made to Officer Callahan by Norcutt was never recorded, but was related to the prosecutor sometime before trial. A substantially similar statement was included in Officer Callahan's written report, wherein

Norcutt was reported to have stated that "[Runick] told me to wait down the alley which I did and then he brought one of the bikes down to me and then he went back and got the second bike." (R. 311). While Norcutt did not use the word "look-out" in the reported statement, the inference is clear that he was acting in that capacity. In light of the fact that this substantially similar statement was provided to Norcutt, we find that no prejudicial surprise occurred. Accordingly, the trial court did not abuse its discretion in denying Norcutt's motion for mistrial.[2]

The final motion for mistrial was based upon the trial court's decision to inform the parties, in a bench conference held outside the hearing of the jury, that a previous statement made by Norcutt would be available for impeachment purposes if Norcutt changed his story at trial. The previous statement had earlier been ruled inadmissible.

Norcutt contends that by giving this advice, the trial court abandoned its role as an impartial arbiter and impinged on his right to a fair trial. He cites to the dissenting opinion in *Ware v. State* (1990), Ind.App., 560 N.E.2d 536, 545, *trans. denied,* wherein Judge Conover stated that "[e]ven without the presence of a jury to be influenced, the trial court has the duty to conduct proceedings in an impartial manner, so as not to intimidate either party in presenting matters to the court...."

■ The trial court has a duty to remain impartial and refrain from unnecessary remarks. *Rowe v. State* (1989), Ind., 539 N.E.2d 474, 476. However, it also has a duty to conduct the trial in a manner calculated to promote the ascertainment of truth, fairness, and economy of time. *Id.* Within the scope of this duty is the authority to make impartial statements about the general admissibility of evidence. *Brandon v. State* (1979), 272 Ind. 92, 396 N.E.2d 365, 371.

■ In the present case, the trial court was merely attempting to ensure that the case would progress in an expeditious man-

---

2. We note that there is no indication in the record that the prosecutor knowingly attempted to mislead Norcutt's counsel.

ner.[3] The trial court's remarks were made to give both parties an indication of how the court would rule on the use of Norcutt's prior statement for impeachment purposes. In part, the remarks served to warn Norcutt's counsel that impeachment by use of the prior statement was possible. The remarks were not made to intimidate either party; they did not constitute grounds for mistrial.

## CONCLUSION

We hold that venue was established by a preponderance of the evidence. Furthermore, we hold that the trial court did not err in denying Norcutt's motions for mistrial.

Affirmed.

CHEZEM and FRIEDLANDER, JJ., concur.

---

**3.** We note that the trial had already been delayed by rancor and numerous lengthy legal arguments on evidentiary matters.